ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeals of - ) | |
| ) | |
| Arctic Swan Construction Inc. ) | ASBCA Nos. 63510, 64085 |
| ) | |
| Under Contract No. FA5004-22-C-0002 ) | |

APPEARANCE FOR THE APPELLANT:        Mr. Edmund Charles Palmer
                                      President

APPEARANCES FOR THE GOVERNMENT:   Caryl A. Potter, III, Esq.
                                      Air Force Deputy Chief Trial Attorney
                                    Geoffrey R. Townsend, Esq.
                                      Trial Attorney

OPINION BY ADMINISTRATIVE JUDGE WOODROW
ON THE GOVERNMENT'S MOTION FOR SUMMARY JUDGMENT

Pending before the Board is the government's Motion for Summary Judgment regarding the appellant's claim for additional compensation under a fixed-price contract to transport and set-up furniture and appliances in housing on and around Eielson Air Force Base in Alaska. The main dispute is whether the contract's Performance Work Statement (PWS) and accompanying bid schedules required appellant, Arctic Swan Construction, Inc. (Arctic Swan or appellant), to install, connect, and disconnect washers and dryers as a part of the base contract price, or if such requirements were out-of-scope work warranting an equitable adjustment.

Arctic Swan opposes the motion, arguing that there are genuine issues of material fact and that the contract contains a latent ambiguity regarding the scope of work and price structure.

Based upon a review of the record, solicitation, the contract, the cross-briefing, and the applicable law, we conclude that there are no genuine disputes of material fact. The dispute presents a pure question of contract interpretation, which is a matter of law. The plain language of the contract supports the government's interpretation and any perceived ambiguity would be patent, precluding the appellant's recovery. Therefore, we grant the government's Motion for Summary Judgment with regard to ASBCA No. 64085 and deny the appeal. We also dismiss ASBCA No. 63510 for lack of jurisdiction.

*The Solicitation and Contract*

1.  On July 15, 2021, the government issued Solicitation No. FA500421B0004 for drayage and furnishing management services (R4, tab 1 at 1-44).  This solicitation culminated in the award of Contract No. FA500422C0002 to the appellant (R4, tab 20 at 1-34).

*Performance Work Statement (PWS) Requirements*

2.  The PWS incorporated into the contract contained explicit, mandatory directives regarding the handling, delivery, and installation of appliances, specifically including washers and dryers (R4, tab 21).

- PWS ¶ 1 stated:  "The contractor shall assemble/disassemble & setup all government-owned furnishings . . . as well as setup and connect all appliances" (R4, tab 21 at 3);
- PWS ¶ 1.1.9 stated:  "The contractor shall deliver, assemble/disassemble and setup all furnishings, washers/dryers & appliances" (*id.* at 5);
- PWS ¶ 1.1.10 specifically directed:  "The contractor shall deliver washers and dryers per the [request order].  The contractor shall be responsible for supplying a certified installer to insure both water and electrical connections are correctly installed and the unit is setup correctly" (*id.*).

*The Bid Schedules*

3.  The Solicitation included two distinct Bid Schedules:  Attachment 2 for Housing and Attachment 3 for Unaccompanied Housing (Dorm).  Both schedules utilized a tabular format requiring the contractor to input pricing for various Contract Line Item Numbers (CLINs).  (R4, tabs 3-4)  The tables included columns for "Item Description," "Qty" (Quantity), "Unit," "Unit Price," and "Total Price."  Within these schedules, "Washer" and "Dryer" were listed as distinct line items, quantified by the unit "EA" (Each).  Crucially, neither Bid Schedule contained a separate line item, CLIN, or designated sub-contract line item for "installation labor," "certified installer," "connection," or "disconnection" services.  Bidders were required to provide a single, fully burdened "Unit Price" for each washer or dryer handled.  (R4, tabs 3 at 1, 4 at 1)

*Lack of Pre-Bid Inquiry*

4. There is no evidence in the record, nor does the appellant allege that it submitted any Requests for Information (RFIs) or sought clarification from the Contracting Officer regarding how to price the "certified installer" requirement within the provided Bid Schedule structure prior to the submission of its bid (*see* gov't reply at 1; app. opp'n at 1-2).

*Administrative Claims and Contracting Officer Final Decisions (COFDs)*

5. During contract performance, a dispute arose regarding whether washer and dryer installation was included in the base contract price, prompting the appellant to seek additional compensation (R4, tabs 30, 44). Arctic Swan submitted a document dated August 8, 2022, captioned as a "Request for Equitable Adjustment" (R4, tab 30 at 1). The document did not request a contracting officer's final decision and did not contain a claim amount (*id.* at 1-2). Because no claim amount was stated, it is unclear whether certification was required. However, the document contained a certification stating "I certify that the request is made in good faith, and that the supporting data will be provided are accurate and complete to the best of my knowledge and belief" (*id.* at 1). On September 15, 2022, the contracting officer (CO) issued a Final Decision referencing a claim amount of $685,200 and denying it (R4, tab 31). The origin of the claim amount does not appear to be in the record. Arctic Swan's appeal from that final decision was docketed as ASBCA No. 63510.

6. On November 7, 2024, following the government's submission of a Motion to Dismiss the Appeal for Lack of Jurisdiction, Arctic Swan submitted what it characterized as a "full certified claim" in the amount of $334,213. This document also asked for a CO's decision and included certification language consistent with that required by the Contract Disputes Act (R4, tab 44). On December 9, 2024, the CO issued a Final Decision denying Arctic Swan's November 7, 2024 claim in its entirety (R4, tab 45). Arctic Swan's appeal from the second final decision was docketed as ASBCA No. 64085. Both final decisions denied the appellant's requests for equitable adjustment and additional compensation, affirming the government's position that the PWS required the installation and connection of washers and dryers at the unit prices established in the contract (R4, tabs 31 at 1-2, 45 at 2-3).

DECISION

**I. Procedural History and Dismissal of ASBCA No. 63510**

Before addressing the merits of the summary judgment motion, we must clarify the procedural background of the two appeal numbers in this case: ASBCA

Nos. 63510 and 64085. Both appeal numbers relate to the exact same underlying dispute, but they were filed at different times.

When Arctic Swan filed its first appeal, ASBCA No. 63510, it had not yet submitted a "claim" to the CO that fully complied with the legal requirements. Under the law that governs these contracts (the Contract Disputes Act), submitting a certified claim is a strict requirement before this Board has the legal authority ("jurisdiction") to hear an appeal. *M. Maropakis Carpentry, Inc. v. United States*, 609 F.3d 1323, 1327-28 (Fed. Cir. 2010). Because the initial claim was jurisdictionally deficient, the Board did not have jurisdiction over ASBCA No. 63510. Recognizing this defect, the government filed a Motion to Dismiss ASBCA No. 63510.

To fix this missing step, Arctic Swan did exactly what it was supposed to do: it submitted a fresh, properly certified claim to the Contracting Officer. After the CO issued a final decision denying that new claim, Arctic Swan appealed again. That second, legally valid appeal became ASBCA No. 64085. Alternatively, Arctic Swan could have attempted to remedy the deficiencies in its August 2022 submission and convert the request for equitable adjustment into a claim. As we interpret Arctic Swan's submission of the November 2024 claim as replacing the August 2022 submission, the August 2022 submission should have been dismissed.

On September 26, 2025, we issued an order denying the government's Motion to Dismiss ASBCA No. 63510, stating that the motion was "moot" because Arctic Swan had cured the problem with its second appeal. That ruling was an error. The proper legal procedure was to grant the government's motion and formally dismiss the first appeal for lack of jurisdiction. *Ball, Ball & Brosamer, Inc. v. United States*, 878 F.2d 1426, 1428 (Fed. Cir. 1989); *Cobeal Consulting Group*, ASBCA No. 63815, 25-1 BCA ¶ 38,742 at 188,340. This decision corrects that mistake. Accordingly, the government's Motion to Dismiss ASBCA No. 63510 is granted, and ASBCA No. 63510 is dismissed for lack of jurisdiction.

We want to make it absolutely clear that dismissing ASBCA No. 63510 is strictly a procedural "housekeeping" matter. It does not punish Arctic Swan or prejudice its rights in any way. Because Arctic Swan successfully corrected the paperwork issue by filing ASBCA No. 64085, all of Arctic Swan's substantive arguments and claims remain fully protected. The remainder of this decision entirely resolves those claims under the valid appeal, ASBCA No. 64085.

## II. The Standard of Review for a Motion for Summary Judgment

Summary judgment is appropriate when the record shows there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party requesting summary

judgment (here, the government) has the initial burden to prove that no such factual disputes exist, and the Board must resolve any significant doubt in favor of the party opposing the motion. *Mingus Constructors v. United States*, 812 F.2d 1387, 1390 (Fed. Cir. 1987) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)). However, to successfully defeat the motion, the opposing party cannot simply claim that the facts conflict; rather, they must point out specific facts showing there is a genuine issue that requires a trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288 (1968)). Finally, contract interpretation is a question of law, making it an issue that is properly resolved through summary judgment. *Varilease Tech. Grp., Inc. v. United States*, 289 F.3d 795, 798 (Fed. Cir. 2002) (citing *Textron Def. Sys. v. Widnall*, 143 F.3d 1465, 1468 (Fed. Cir. 1998)); *see also Walsh Grp. Ventures*, ASBCA No. 61222, 20-1 BCA ¶ 37,615 at 182,584.

## III. The Meaning of Contract Terms is a Question of Law, Not Fact

We find that summary judgment is appropriate here because the material facts are undisputed, and the appeal turns entirely upon contract interpretation. Arctic Swan attempts to defeat summary judgment by raising several arguments, none of which establish a genuine dispute of material fact. We address each of Arctic Swan's arguments below.

### A. The Contract, Read as a Whole, Mandates Installation

Arctic Swan first argues that summary judgment is precluded because there is a factual dispute over whether the PWS terms such as "setup," "connect," and "install" define a uniform scope of work, or materially different levels of effort, and whether the requirement for a "certified installer" created a distinct scope of work requiring increased labor (app. opp'n at 2).

This argument fails because the actual text of the contract is undisputed. The disagreement lies solely in the *interpretation* of those undisputed words. Under established Federal Circuit precedent, the interpretation of contract terms, including whether specific words convey different levels of effort, is a question of law, not fact. *Varilease*, 289 F.3d at 798. The government correctly notes that the Board is tasked with determining the legal effect of these terms based on the four corners of the document (gov't mot. at 7). Therefore, Arctic Swan's differing interpretation of these terms does not create a triable issue of fact.

Arctic Swan argues that the government-furnished bid schedule templates define the economic scope of the work. Specifically, Arctic Swan contends that, because the bid schedules only listed "Washer" and "Dryer," the pricing was strictly

5

limited to the transportation and basic handling of the items, not their installation (app. opp'n at 2-3).

A bedrock principle of contract interpretation requires that the contract must be read as a whole, giving reasonable meaning to all its parts so that no provision is rendered useless or superfluous. *Lockheed Martin Aeronautics Co*., ASBCA No. 62209, 22-1 BCA ¶ 38,178 at 185,419 (citing *NVT Techs., Inc. v. United States*, 370 F.3d 1153, 1159 (Fed. Cir. 2004)). The bid schedules cannot be read in a vacuum. Section 1.1.10 of the PWS unambiguously requires the contractor to supply a "certified installer" to ensure water and electrical connections are installed correctly for washers and dryers (R4, tab 21 at 5). The only reasonable interpretation of the contract, when read as an integrated whole, is that the unit price submitted by Arctic Swan for a washer or dryer encompassed all requirements tied to that item in the PWS—including delivery, connection, and certified installation (gov't reply at 2). Finding otherwise would render the explicit directives of PWS ¶¶ 1, 1.1.9, and 1.1.10 meaningless.

## B. There Is No Ambiguity, and Any Ambiguity Would Be Patent

Arctic Swan contends that the interaction between the PWS, which demands certified installation labor, and the bid schedule, which groups appliances under general unit pricing without separate line items for installation, creates a "latent ambiguity," entitling Arctic Swan to have the ambiguity construed against the government (app. opp'n at 3-4).

Arctic Swan's argument fails at the threshold because the contract is not ambiguous. Contract language is ambiguous only when it is susceptible to more than one reasonable interpretation; it is not enough that the parties advance competing readings. *NVT Techs.*, 370 F.3d at 1159; *Lebolo-Watts Constructors 01 JV, LLC*, ASBCA No. 59740 *et al.*, 21-1 BCA ¶ 37,789 at 183,432. Both proffered interpretations must fall within a "zone of reasonableness," and a party that advances an unreasonable interpretation may not invoke the rule of *contra proferentem* to construe the contract against the drafter. *HPI/GSA-3C, LLC v. Perry*, 364 F.3d 1327, 1334 (Fed. Cir. 2004).

As explained above, Arctic Swan's reading—that its unit prices covered only transportation and basic handling and excluded the connection and installation work required by PWS ¶¶ 1, 1.1.9, and 1.1.10—is not reasonable, because it can be reached only by disregarding three provisions that assigned that work to the contractor and by rendering them superfluous. Because only the government's interpretation is reasonable, the contract is not ambiguous, and the rule of *contra proferentem*, on which Arctic Swan's latent-ambiguity theory depends, never comes into play.

6

Even if the interaction between the PWS and the bid schedule created an ambiguity, that ambiguity would be patent rather than latent. A patent ambiguity is an obvious omission, inconsistency, or discrepancy of significance. A contractor can discover a patent ambiguity through reasonable and customary care. A latent ambiguity, by contrast, is a hidden defect that is not apparent on the face of the contract and cannot be discovered through ordinary care. *Per Aarsleff A/S v. United States*, 829 F.3d 1303, 1312-13 (Fed. Cir. 2016); *Lebolo-Watts*, 21-1 BCA ¶ 37,789 at 183,433.

Arctic Swan now points to what it characterizes as a discrepancy in the contract documents. The PWS expressly required the contractor to supply a "certified installer" and to assume liability for water and electrical connections (R4, tab 21 at 5). However, the bid schedule provided only a single unit-price line for each washer and dryer. To the extent a bidder was unsure whether to include the cost of the certified installer in the unit cost, this conflict would have been obvious on the face of the solicitation. A reasonable contractor reviewing those documents before bidding would have recognized the alleged uncertainty about how to price the required certified-installation labor. Such a facial discrepancy is a clear example of a patent ambiguity. *See Triax Pac., Inc. v. West*, 130 F.3d 1469, 1474-75 (Fed. Cir. 1997) (applying the patent-ambiguity doctrine where a reasonable contractor reviewing the specifications before bidding would have recognized the facial inconsistency).

Under the doctrine of patent ambiguity, a contractor has an affirmative duty to inquire about such inconsistencies prior to bidding. *Kallidus Techs.*, ASBCA Nos. 61377, 61976, 26-1 BCA ¶ 38,971 at 189,728 (citing *Blue & Gold Fleet, L.P. v. United States*, 492 F.3d 1308, 1313 (Fed. Cir. 2007); *NVT Techs.*, 370 F.3d at 1162)). It is undisputed that Arctic Swan did not seek clarification on this pricing structure before contract award. Arctic Swan's failure to fulfill its duty to inquire precludes it from relying on its unilateral interpretation after the fact.

The Board may resolve questions regarding whether a contract is ambiguous, and whether such an ambiguity is patent or latent, as matters of law on summary judgment. *Certified Constr. Co. of Ky., LLC*, ASBCA No. 58782, 15-1 BCA ¶ 36,068 at 176,130-31 (citing *Varilease*, 289 F.3d at 798). Although Arctic Swan points to its course of performance and internal pricing intent to support its position, extrinsic evidence cannot manufacture an ambiguity where the contract's plain text allows for only one reasonable meaning. Therefore, Arctic Swan's latent ambiguity argument fails to raise a genuine dispute of material fact and does not preclude summary judgment.

7

### C. Varying Claim Amounts Do Not Alter Contract Interpretation

Finally, Arctic Swan argues that differing dollar amounts referenced in the two CO's Final Decisions ($685,200 versus $334,213) reflect material inconsistencies requiring fact-finding (app. opp'n at 4-5).

This argument conflates the administrative processing of a claim with the legal interpretation of the contract's scope. As the government points out, the varying financial amounts claimed or evaluated during the dispute process have no bearing on the legal question of whether the PWS required the installation of washers and dryers in the first instance (gov't reply at 2). Consequently, these monetary discrepancies do not constitute a dispute of *material* fact that would bar summary judgment.

### CONCLUSION

There are no genuine disputes of material fact in this appeal. The plain and unambiguous language of the contract required Arctic Swan to connect, install, and disconnect washers and dryers, utilizing a certified installer. To the extent the pricing structure in the Bid Schedule created confusion regarding how to bill for this explicitly required labor, it constituted a patent ambiguity. Arctic Swan's failure to inquire about this ambiguity prior to bidding bars its claim for an equitable adjustment. We grant summary judgment in favor of the government and deny the appeal in ASBCA No. 64085. We dismiss ASBCA No. 63510 for lack of jurisdiction.

Dated: June 16, 2026

KENNETH D. WOODROW
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

J. REID PROUTY
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

DAVID D'ALESSANDRIS
Administrative Judge
Acting Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA Nos. 63510, 64085, Appeals of Arctic Swan Construction Inc., rendered in conformance with the Board's Charter.

Dated:  June 16, 2026

PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals